UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARK L. KERMAN, et al.                                                        PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:06CV-338-S

CHENERY ASSOCIATES, INC., et al.                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendants, Chenery Associates, Inc., Chenery Management, Inc., Sussex Financial Enterprises, Inc., and Roy Hahn (collectively "Chenery"),[1] to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)(DN 27). For the reasons set forth herein, the motion will be denied.

Chenery has moved to dismiss for lack of personal jurisdiction on the ground that they do not have the requisite minimum contacts with Kentucky. The plaintiffs, Mark L. and Lucy M. Kerman, have alleged jurisdiction over them pursuant to the Kentucky long-arm statute, KRS 454.210, contending that they have conducted business in Kentucky and have committed torts causing injury in Kentucky, all of which form the basis for their complaint. First Amended Complaint, ¶ 14.[2]

On a motion to dismiss for lack of personal jurisdiction which is decided on the basis of the pleadings and affidavits, the court must consider "the pleadings and affidavits in the light most

---

[1] The action is stayed as to the remaining defendants by agreement of the parties.

[2] The plaintiffs also argue in their brief that the court should find Chenery amenable to suit under the nationwide service of process provision found in the RICO statute, 18 U.S.C. § 1965(b). The Sixth Circuit has not yet spoken concerning the breadth of the RICO nationwide service provision. There are various prognostications from the district courts of the Sixth Circuit's analysis of the statute. *See, Kattula v. Jade*, 2007 WL 1695669 (W.D.Ky. June 8, 2007); *800537 Ontario, Inc. v. Auto Enterprises, Inc.*, 113 F.Supp.2d 1116 (E.D.Mich. 2000); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F.Supp.2d 796 (N.D.Ohio 1998). Rather than jump into the fray, the court will rely upon a traditional minimum contacts analysis, consistent with the allegations of the complaint and established law to find personal jurisdiction over Chenery.

favorable to the Plaintiff, and Plaintiff need only make a *prima facie* showing of jurisdiction to defeat Defendants' motion." *Papa John's International, Inc. v. Entertainment Marketing & Communications, International, Ltd.*, 381 F.Supp.2d 638, 641 (W.D.Ky. 2005), *quoting*, *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

> As noted in *Turek v. Mold-Rite Tool, Inc.*, 2006 WL 3068813 (E.D.Ky. 2006),
>
> Kentucky courts construe the state's long-arm statute as coextensive with the limits of due process. *Wilson v. Case*, 85 S.W. 3d 589, 592 (Ky. 2002). The Court may exercise jurisdiction over Defendants if personal jurisdiction is consistent with the requirements of federal due process. Therefore, personal jurisdiction exists in the case *sub judice* if the Defendants have "minimum contacts" with Kentucky "'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Gateway Press, Inc. v. LeeJay, Inc.* 993 F.Supp. 578, 580 (W.D.Ky. 1997)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Through its long-arm statute "Kentucky has elected to assume personal jurisdiction over a non-resident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce v. Seraphin*, 787 S.W.2d 705, 707 (Ky.Ct.App. 1990), *quoted in Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F.Supp. 761, 764 (W.D.Ky. 1997)..."Courts have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Id.* (quoting, *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky.Ct.App. 1984)).

*Turek*, 2006 WL 3068813 at *2.

In *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 981 (6th Cir. 1992), the court stated that "[s]pecific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum." In assessing the existence of specific jurisdiction, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th

Cir. 1968); *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991).  As stated in *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989), "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities."

In an intentional tort-based action, purposeful availment has been found where a non-resident defendant engaged in wrongful conduct targeted at a plaintiff in the forum state.  When the communications themselves create the tort, the "defendant is purposefully availing himself of the privilege of causing a consequence" in the forum state.  *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).  *See also*, *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001); *D.C. Micro Development, Inc. v. Lange*, 246 F.Supp.2d 705 (W.D.Ky. 2003).

Mark Kerman was the founder of Kenmark Optical in Louisville, Kentucky.  In the summer of 2000, he and his wife were approached by an individual named Craig Stone about an investment opportunity called a Custom Adjustable Rate Debt Structure (known as a "CARDS transaction").  Believing that the transaction would provide them with Euros to conduct business in Europe and that it would provide them certain tax advantages on the investment, they entered into a contract with an entity called Chenery Associates to invest $5,000,000.00, agreeing to pay a flat fee of $500,000.00 for the transaction.  Ultimately, the transaction was found by the Internal Revenue Service to be a potentially abusive tax shelter, as defined by the Internal Revenue Code, and the Kermans were charged nearly $500,000.00 in penalties for the year 2000.

The Kermans filed suit against Chenery, attorney R.J. Ruble, and the law firm of Sidley, Austin, Brown & Wood, LLP, for fraud, conspiracy, commercial bribery, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962.  They allege, in a nutshell, that they were defrauded by the defendants when they were induced to invest in the CARDS transaction and paid Chenery a large fee on the promise that the investment provided a legal means

to reduce their tax liability when, in fact, the defendants knew that their scheme would be disallowed by the IRS.

Chenery alleges that it did not have the requisite minimum contacts with Kentucky to render it amenable to suit here.

The amended complaint alleges that the Kermans were solicited to participate in the CARDS transaction and were promised a favorable opinion form a major law firm which would eliminate the risk of underpayment penalties from the IRS. In October 2000, the plaintiffs were provided a draft legal opinion which was designed to induce and did induce the Kermans to enter into the transaction. The Kermans signed a contract with Chenery on December 28, 2000 agreeing to participate in the CARDS transaction. In his supplemental affidavit, Roy Hahn states that Chenery never had any formal sales or marketing organization in place. He states that Chenery relied upon informal contacts with financial advisors to sell its financial products. He claims that he was familiar with Craig Stone, a financial advisor who allegedly played a prominent role in promoting the CARDS transaction to the Kermans, but claims that Stone had no authority to hold himself out as having any professional connection to Chenery. The Kermans have provided some documentation, however, that Stone utilized a Chenery e-mail address and letterhead, and they allege that Hahn was copied on some of the correspondence. Hahn admits that he was copied on one of the e-mails from Stone, but does not recall having seen it.

The Kermans contend that they received e-mails, telephone calls, and faxes in Kentucky from Hahn and other individuals from Chenery. They allege that they were visited several times in Kentucky in 2000 by Craig Stone, purportedly on behalf of Chenery, in order to induce them to enter into the CARDS transaction. In support, the Kermans have produced evidence of written promotional materials which were allegedly sent to them in Kentucky. They further allege that two contracts, one which was rejected and one which was accepted and executed, were sent to them in Kentucky on Chenery letterhead by Hahn. These contracts are dated November 22, 2000 and

November 27, 2000, respectively. Hahn does not deny signing and sending them. He states only that they are form engagement agreements. Hahn also acknowledges that Chenery received plaintiffs' $50,000.00 initial payment on November 28, 2000. The Kermans paid additional fees through December 1, 2001 when invoiced by Chenery. They executed various financing documents sent to them by Hahn and other Chenery personnel to initiate the transaction, and participated for one year. Hahn then assisted the Kermans in unwinding the transaction when they no longer wished to participate. Hahn was in contact with the Kermans in Kentucky in order to accomplish this. Believing throughout their involvement with Chenery and Hahn that the CARDS transaction was a legitimate tax shelter, the Kermans filed their income tax return for the year 2000 for which they were later charged substantial penalties.

The Kermans have alleged that they were defrauded. The e-mails, phone calls, mailings and personal solicitations are the acts of deception which the Kermans allege induced them to enter into the transaction. These contacts forming the basis for the claim, Chenery and Hahn have been shown to have purposefully availed themselves of the privilege of causing a consequence in the state. *Wein Air Alaska*, *supra*. The cause of action clearly arises from these defendants' activities in Kentucky. After having allegedly fraudulently induced the Kermans to enter into the transactions, the defendants invoiced the Kermans for fee payments, provided them the legal opinion upon which they relied in filing their income tax return, forwarded various financial documents for signature, dealt with the Kermans' inquiries concerning their investment, and eventually assisted in unwinding the transaction. The causes of action arise from these alleged contacts.

Hahn contends that his involvement with the transaction occurred in principal part after the Kermans had signed the engagement agreement. The Kermans have met their *prima facie* burden, however, to establish personal jurisdiction over him. They made a *prima facie* showing of Hahn's specific contacts with the Kermans in Kentucky in the negotiation process, and later ongoing involvement in the mechanics of the transaction, during which the Kermans contend they were under

the misconception that the CARDS transaction was proper and legitimate. Hahn also urges, by way of his reply brief, that there has been no showing that the acts of Chenery can be attributed to Hahn personally. The burden on the plaintiffs is slight in opposing a 12(b)(2) motion to dismiss. The plaintiffs need not defend their claims on the merits in responding to such a motion. The plaintiffs have claimed that they were contacted personally by Hahn regarding the CARDS transaction and that he made various misrepresentations in the course of negotiations. Hahn has been named individually, and we conclude that allegations of personal as well as corporate liability have been asserted.

Having found that the first two prongs of the *Mohasco* test have been met, an inference arises that fairness is also present, and only in the rare instance will a case not meet the this third requirement. *D.C. Micro Development, Inc. v. Lange*, 246 F.Supp.2d 705 (W.D.Ky. 2003), *quoting, First National Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). We do not find anything to suggest that it would be unfair to find Chenery and Hahn to be amenable to suit in this jurisdiction for alleged acts of fraud perpetrated upon these Kentucky investors.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendants, Chenery Associates, Inc. Chenery Management, Inc., Sussex Financial Enterprises, Inc., and Roy Hahn, to dismiss for lack of personal jurisdiction (DN 27) is **DENIED**. **IT IS FURTHER ORDERED** that the motion of the plaintiffs, Mark L. and Lucy M. Kerman, to strike the defendants' reply brief (DN 46) is **DENIED**.

**IT IS SO ORDERED.**