IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| MARK L. and LUCY M. KERMAN, | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 3:06-CV-00338-S |
| v. | ) ) | |
| CHENERY ASSOCIATES, INC., *et al*., | ) ) | |
| Defendants. | ) ) | |

**HVB'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENT

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................3

    I.    There Is No Basis To "Convert" HVB's Motion To Summary Judgment ..............3

    II.    Plaintiffs' Claims Are All Time-Barred ..................................................................5

        A.    Plaintiffs' RICO Claims Are Time-Barred ................................................. 5

        B.    Plaintiffs' State-Law Claims Are Time-Barred .......................................... 8

        C.    The DPA Does Not Save Plaintiffs'
            Time-Barred Claims From Dismissal ....................................................... 10

    III.    Plaintiffs' Claims Fail For Independent, Alternative Reasons .............................11

        A.    Plaintiffs' RICO Claims Are Barred By The PSLRA ............................. 11

        B.    Plaintiffs Fail To State A Fraud Or Misrepresentation Claims................. 12

        C.    Plaintiffs Collateral Estoppel Argument Is Manifestly Meritless............. 14

    IV.    The Court Should Strike Plaintiffs' Damages Claim.............................................15

CONCLUSION............................................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ariz. v. Maricopa County Medical Soc.,*
  457 U.S. 332 (1982) .................................................................................................. 6

*Bankers Trust Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) .................................................................................... 7

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 446 (7th Cir. 1990) ..................................................................................... 7

*Coal-Mac, Inc. v. JRM Coal Co., Inc.*,
  743 F. Supp. 499 (E.D. Ky. 1990) ............................................................................. 7

*Combs v. Albert Kahn Associates, Inc.,*
  183 S.W.3d 190 (Ky. App. 2006) .............................................................................. 9

*Curtis Inv. Co., LLC v. Bayerische Hypo- Und Vereinsbank, AG,*
  341 Fed. Appx. 487 (11th Cir. 2009) ........................................................... 1, 10, 12, 14

*Curtis Inv. Co., LLC v. Bayerische Hypo-Undvereinsbank, AG,*
  2007 U.S. Dist. LEXIS 94012 (N.D. Ga. Dec. 20, 2007) .................................. passim

*Fletcher v. Branch Banking & Trust Corp.*,
  2007 U.S. Dist. LEXIS 70300 (W.D. Ky. Sept. 21, 2007) ...................................... 12

*Fluke Corp. v. LeMaster*,
  306 S.W.3d 55 (Ky. 2010) ............................................................................... 2, 9, 10

*Freschi v. Grand Coal Venture*,
  767 F.2d 1041 (2d Cir. 1985) .................................................................................. 15

*Hardin v. Straub*,
  490 U.S. 536 (1989) .................................................................................................. 7

*Harralson v. Monger*,
  206 S.W.3d 336 (Ky. 2006) ..................................................................................... 10

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) ................................................................................. 4

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997) .................................................................................................. 7

*McAnly v. Middleton & Reutlinger, P.S.C*,
   77 F. Supp. 2d 810 (W.D. Ky. 1999) .......................................................................... 9

*Panna v. Firstrust Savings Bank*,
   749 F. Supp. 1372 (D. N.J. 1990) ............................................................................... 7

*Pension Fund-Mid-Jersey Trucking Industry v. Omni Funding Group*,
   687 F. Supp. 962 (D.N.J. 1988) .................................................................................. 6

*Republic Bank & Trust Co. v. Bear*,
   2010 U.S. Dist. LEXIS 36365 (W.D. Ky. Apr. 12, 2010) (Simpson, J.) ................. 5, 8

*Reves v. Ernst & Young*,
   494 U.S. 56 (1990) .................................................................................................... 11

*River City Rentals, LLC v. Bays*,
   2008 U.S. Dist. LEXIS 95335 (W.D. Ky. Nov. 20, 2008) .......................................... 4

*Schwartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................... 11

*SEC v. J.T. Wallenbrock & Assocs.*,
   313 F.3d 532 (9th Cir. 2002) .............................................................................. 11, 12

*Stone v. Kirk*,
   8 F.3d 1079 (6th Cir. 1993) ...................................................................................... 15

*Sussex Fin. Enters. v. Bayerische Hypo- Und Vereinsbank AG*,
   2010 U.S. Dist. LEXIS 73884 (N.D. Cal. Mar. 17, 2010) .................................. passim

*Thomas v. Publrs. Clearing House*,
   29 Fed. Appx. 319 (6th Cir. 2002) ......................................................................... 3, 4

*Thompson v. North American Stainless, LP*,
   567 F.3d 804 (6th Cir. 2009) .................................................................................. 2, 6

*United States v. Qaoud*,
   777 F.2d 1105 (6th Cir. 1985) .................................................................................. 12

*Wuliger v. Mfrs. Life Ins. Co. (USA)*,
   567 F.3d 787 (6th Cir. 2009) ...................................................................................... 8

**STATUTES**

18 U.S.C. § 1964(c) ........................................................................................................ 11

KRS § 500.050 ................................................................................................................ 10

Defendants Bayerische Hypo- und Vereinsbank and HVB U.S. Finance, Inc., f/k/a HVB Structured Finance, Inc. (together, "HVB") submit this reply memorandum of law in further support of their Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Motion" or "Mtn.").

## **PRELIMINARY STATEMENT**

HVB established in its Motion that the Fourth Amended Complaint (the "Complaint") should be dismissed as a matter of law.  The vast bulk of plaintiffs' rambling, exhibit-laden opposition is literally non-responsive.  While plaintiffs perseverate on the DPA, they ignore the damaging fact (for them) that the DPA provides that "all parties involved, including the clients/"borrowers," [such as the Kermans] knew that the transactions would be unwound in approximately one year in order to generate the phony tax benefits sought by the client participants."  (Complaint Ex. F (DPA) at ¶ 19); *cf.*, *Curtis Inv. Co., LLC v. Bayerische Hypo- Und Vereinsbank, AG*, 341 Fed. Appx. 487, 490 (11th Cir. 2009) (noting that IRS had found that "all of the parties to the [CARDS] transaction, including [client participants, such as the Kermans], knew that the transaction was intended to be unwound after one year"); *Sussex Fin. Enters. v. Bayerische Hypo- Und Vereinsbank AG*, 2010 U.S. Dist. LEXIS 73884 at *39 (N.D. Cal. Mar. 17, 2010) ("The client could also receive a sizable tax benefit -- albeit one that *all* realized was of questionable legality -- within that first year") (emphasis supplied).  Likewise, while plaintiffs devote page after page to the *Rezner* and *Gustashaw* decisions, neither of those decisions address, let alone resolve, the dispositive issues presented by the instant Motion.  And, while plaintiffs go on and on about the Clayton Act's Suspension of Limitations provision, there is no antitrust claim in this action, there is no suspension of limitations provision in the RICO Act and only Congress could amend the RICO Act to include such a provision.  To the extent plaintiffs actually address the material issues, their opposition is littered with misrepresentations of the law and of HVB's arguments.  In spite of plaintiffs' concerted effort to obfuscate and dissemble, a straight-forward examination of plaintiffs' allegations and the law demonstrates that the Complaint fails to state a claim upon which relief may be granted.

First, plaintiffs effectively concede that their RICO claims are time-barred under settled RICO jurisprudence by ignoring it entirely and instead urging the Court to make new law. Specifically, plaintiffs would have this Court "cut and paste" the Clayton Act's Suspension of Limitations provision into the RICO Act. Plaintiffs do not cite a single appellate-level decision, or even a district court decision from the Sixth Circuit, applying the Clayton Act's statutory tolling provision to a RICO claim. Plaintiffs' sole "support" for its argument is a 22 year old district court decision from the Third Circuit that acknowledged the uniqueness of its holding at the time and has not been followed by any court since. Simply put, importing an idiosyncratic suspension of limitations provision from one statute into another would be an "unbridled" -- and inappropriate -- "judicial foray[] into the legislative sphere." *Thompson v. North American Stainless, LP*, 567 F.3d 804, 807 (6th Cir. 2009).

Second, plaintiffs attempt to stave-off dismissal of their time-barred state-law claims by blatantly misrepresenting Kentucky's discovery rule. Plaintiffs repeatedly assert that the applicable periods of limitations did not begin to run until plaintiffs had actual knowledge of HVB's "particular role in the CARDS scheme" (Opp. at 40) because they supposedly had "*no* affirmative duty to exercise due diligence in discovering the fraud and misrepresentations." (*id.* at 42; *see also id.* at 40) (emphasis in original). That is false. Indeed, the *exact opposite* is true. As the Kentucky Supreme Court confirmed earlier this year, an "injured party has an affirmative duty to use diligence in discovering the cause of action within the limitations period." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010) (citation omitted). Consequently, the "awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on [plaintiffs] the duty to discover the responsible parties." *Id.* Here, plaintiffs' own allegations and arguments leave no doubt that plaintiffs were "aware" of their alleged injury (the deprivation of the tax and supposed foreign currency benefits of the CARDS loan) and the "instrumentality" of that purported injury (HVB's termination of their loan) no later than December 2001 -- more than six years before plaintiffs filed suit against HVB, and at least one year *after* the longest applicable period of limitations had expired.

2

Third, even assuming for the sake of argument that plaintiffs had any timely claims (which they do not), plaintiffs' claims fail for independent and alternative reasons. Because the alleged fraud involves the purchase and sale of a promissory note, plaintiffs' RICO claims could have been brought as securities fraud claims and are, therefore, barred by the Private Securities Litigation Reform Act ("PSLRA"). Furthermore, as two district courts have recently held in dismissing fraud claims asserted against HVB relating to CARDS, it is "simply unreasonable for [plaintiffs] to rely on any statement by any defendant that HVB would not exercise the repayment rights specifically reserved to it in the Credit Agreement." *Curtis Inv. Co.,* 2007 U.S. Dist. LEXIS 94012 at *26 n. 11; *see also Sussex Fin. Enters.*, 2010 U.S. Dist. LEXIS 73884, *40 ("party may not, as a matter of law, justifiably rely on a representation that is patently at odds with the express provisions of a written contract"). As a result, plaintiffs' fraud and negligent misrepresentation claims fail as a matter of law. The balance of plaintiffs state-law claims are similarly riddled with fatal pleading deficiencies.

Finally, even assuming for the sake of argument that plaintiffs' claims were not time-barred, were not otherwise barred and were not inadequately pleaded, plaintiffs' claim for back-taxes, interest and penalties are not legally cognizable as "damages" and should be stricken.

## ARGUMENT

### I. There Is No Basis To "Convert" HVB's Motion To Summary Judgment

In a transparent attempt to divert the Court's attention from the legal deficiencies of the Fourth Amended Complaint, plaintiffs proffer and discuss voluminous submissions appended to their opposition. Plaintiffs' excuse for doing so is that HVB supposedly "converted" their motion into one for summary judgment by attaching the operative contracts at the heart of the Complaint and other documents referenced in the Complaint. (*See* Opp. at 14-15). That is incorrect.

Rule 10(c) of the Federal Rules of Civil Procedure (each a "Rule") expressly makes exhibits attached to a pleading "an integral part of the pleadings for all purposes." *Thomas v. Publrs. Clearing House*, 29 Fed. Appx. 319, 322 (6th Cir. 2002) (quoting 5 Charles Alan Wright

3

& Arthur R. Miller, Federal Practice & Procedure, § 1327 (2d ed. 1990)). Where, as here, a plaintiff "fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." *Id.* (citation omitted). If such document is "central to the plaintiff's claim" and the "authenticity of the document is not challenged," it "may be considered by the court without converting the motion into one for summary judgment." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted); *see, e.g.*, *River City Rentals, LLC v. Bays*, 2008 U.S. Dist. LEXIS 95335, at *6 (W.D. Ky. Nov. 20, 2008) (because the "Agreement is referred to in Plaintiff's Complaint and is central to its claim . . . the Court may consider it" without converting the motion to summary judgment).[1]

Here, the Customer Agreement, Credit Agreement, HVB-Finance/Colindale Credit Agreement, and Colindale/HVB-Finance loan and other documents submitted in support of HVB's motion to dismiss are each referenced in the Complaint and are "central" to plaintiffs' claims. (*Cf.,* Gallagher Decl., Exs. A-D *with* Complaint ¶¶ 22, 23, 26, 47; *cf.*, Welch Decl., Exs. 1-4 *with* Complaint ¶¶ 22, 23, 30-33, 76). Plaintiffs do not challenge the authenticity of these documents. There is, therefore, no basis to "convert" HVB's motion to dismiss into one for summary judgment. Accordingly, while the Court may consider the Customer Agreement, Credit Agreement, HVB-Finance/Colindale Credit Agreement, and Colindale/HVB-Finance loan and the other documents referenced in the Complaint and submitted in support of HVB's motion to dismiss, the Court may not consider plaintiffs' miscellaneous evidentiary submissions.

Likewise, there is no basis to apply the summary judgment standard in deciding this dismissal motion or to defer decision until discovery is complete. The question presented by the instant Motion is not whether there are disputed issues of material fact but whether plaintiffs'

---

[1] Plaintiffs know this. HVB briefed the "incorporation by reference" doctrine in support of its motion to dismiss the Third Amended Complaint (Dkt. No. 173 at 3-5) and reminded plaintiffs of that doctrine in their opening brief in support of the instant Motion (Mtn. at 4, n. 4). Characteristically, rather than attempt to show why the doctrine is inapplicable (which they cannot) or abandon an argument that they know to be specious (which they apparently will not), plaintiffs simply ignore it. That is neither helpful to the Court nor advances plaintiffs' case.

claims are barred (by the statute of limitation or otherwise) and, if not, whether they have adequately pleaded any timely claims. As this Court recently noted, under the Supreme Court's decision in *Ashcroft v. Iqbal*, _ U.S. _, 129 S.Ct. 1937, 1949 (2009), a complaint now "only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Republic Bank & Trust Co. v. Bear*, 2010 U.S. Dist. LEXIS 36365, at *4-5 (W.D. Ky. Apr. 12, 2010) (Simpson, J.) (citations, quotations and brackets omitted). "This raises the bar from where *Conley v. Gibson* [] had left it . . ." *Id*. at *5.[2] "While [the Court] must take the complaint's factual allegations as true in making this assessment, [it] need not accept the truth of legal conclusions or draw unwarranted factual inferences." *Id.* (citations omitted). That is the standard governing the disposition of the HVB's motion.

## II.   Plaintiffs' Claims Are All Time-Barred

### A.   Plaintiffs' RICO Claims Are Time-Barred

As HVB established in its Motion, the four-year RICO period of limitations expired at least two years before plaintiffs first filed suit against HVB. (Mtn. at 8-11) (citing, *inter alia*, *Curtis Inv. Co., LLC v. Bayerische Hypo-Undvereinsbank, AG*, 2007 U.S. Dist. LEXIS 94012 (N.D. Ga. Dec. 20, 2007), *aff'd*, 341 Fed. Appx. 487, 490 (11th Cir. 2009) (*per curiam*)). Effectively conceding that its RICO claims are time-barred under settled RICO jurisprudence, plaintiffs ignore it entirely and instead ask this Court to save their claims from dismissal by making new law.

To articulate precisely what plaintiffs propose is to identify precisely why the proposal should be rejected. Plaintiffs do not ask the Court to interpret the meaning of any language *actually in* the RICO Act. Nor do plaintiffs ask the Court to interpret or apply any common law tolling doctrine. Rather, plaintiffs would have this Court "cut and paste" the Suspension of

---

[2]   Plaintiffs repeatedly paraphrase, and apparently would have the Court apply, the familiar -- but now superseded -- standard articulated in *Connely v. Gibson*. *See*, *e.g*., Opp. at 15 n.49, 29 n.105, 30 n.109 and 40 n.157. Obviously, the Court should not do so. Again, plaintiffs know this. They cite *Iqbal's* companion case, *Twombly*. (*Id*. at 15 n.48).

Limitations provision from the Clayton Act into the RICO Act. (Opp. at 17) (citing 15 U.S.C. § 16(i)).[3] That would be improper. Congress chose to include a Suspension of Limitations provision in the Clayton Act and omitted any like provision from the subsequently enacted RICO Act. Importing the Clayton Act's Suspension of Limitations provision into the RICO Act -- which Congress could have done, but did not do -- would be an "unbridled judicial foray[] into the legislative sphere." *Thompson*, 567 F.3d at 807; *cf., Ariz. v. Maricopa County Medical Soc.,* 457 U.S. 332, 355 (1982) ("Congress may consider the exception that we are not free to read into the statute").

Not surprisingly, plaintiffs do not cite a single appellate-level decision, or even a District Court decision from the Sixth Circuit, applying the Clayton Act's statutory tolling provision to a RICO claim. Plaintiffs' sole "support" for its argument is a 22 year old district court decision from the Third Circuit that acknowledged the uniqueness of its holding at the time and has not been followed by any court since. *Pension Fund-Mid-Jersey Trucking Industry v. Omni Funding Group*, 687 F. Supp. 962, 963-964 (D.N.J. 1988) ("Neither the parties nor the court have discovered any cases which address" application of Clayton Act Suspension of Limitations provision to RICO claims). Not only is *Pension Fund-Mid-Jersey Trucking Industry* unprecedented, but, as the District Court in *Curtis Inv. Co.* recognized, "compelling policy reasons" militate against accepting novel tolling arguments for RICO claims in tax shelter cases such as this. *Curtis Inv. Co*., 2007 U.S. Dist. LEXIS 94012, at *34 n.14. Specifically, this Court should "decline[] to permit any tolling argument that encourages and rewards attempts to evade the IRS's reporting requirements." *Id.*; (*see also* Mtn. at 10-11). No such policy considerations were implicated in *Pension Fund-Mid-Jersey Trucking Industry*.

---

[3]  Section 16(i) ("Suspension of Limitations") provides in pertinent part:  "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish *violations of any of the antitrust laws*, . . . the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter . . . ." (emphasis supplied).

6

Not one of the other cases cited by plaintiffs holds that the Suspension of Limitations provision of the Clayton Act could be applied or should be applied to RICO claims; only a handful have anything to do with RICO claims at all; and none even remotely supports plaintiffs' argument. *See, e.g.*, *Coal-Mac, Inc. v. JRM Coal Co., Inc.*, 743 F. Supp. 499, 501 n.1 (E.D. Ky. 1990) (expressly declining to decide whether the Suspension of Limitations provision of the Clayton Act applies to civil RICO claims); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) ("*standard* tolling exceptions apply" to RICO claims) (emphasis supplied); *Panna v. Firstrust Savings Bank*, 749 F. Supp. 1372, 1382 (D. N.J. 1990), *vacated on reconsideration at* 760 F. Supp. 432 (D.N.J. 1991) (same).

In an effort to bolster their specious argument, plaintiffs misleadingly quote from Justice Anton Scalia's concurrence in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) to suggest that courts should look to the Clayton Act to answer all questions concerning RICO's period of limitations. (Opp. at 17). However, in analyzing RICO accrual rules (which are not the same as discovery rules under federal common law),[4] the majority held -- and plaintiffs omit -- that the "Clayton Act's express statute of limitations does not necessarily provide all the answers." *Klehr*, 521 U.S. at 193 with *id.* at 197-98. Plaintiffs' selective quotation of *Hardin v. Straub*, 490 U.S. 536 (1989) is even more misleading. (Opp. at 18). *Hardin* has absolutely nothing to do with whether a court can import a tolling provision from one federal statute into another. *Hardin*, 490 U.S. at 539 ("Courts thus should not unravel *state* limitations rules unless their full application would defeat the goals of the federal statute at issue") (emphasis supplied; emphasized word omitted from plaintiffs' quotation of *Hardin*).

In short, the Clayton Act's Suspension of Limitations provision has no place in an analysis of the timeliness of plaintiffs' RICO claims. Consequently, whether and until when HVB was "in the midst of a criminal prosecution" is totally irrelevant. (Opp. at 8, 23). The

---

[4] *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Accrual is the date on which the statute of limitations begins to run . . . Tolling doctrines stop the statute of limitations from running").

7

dispositive fact is that plaintiffs knew or should have known that they had been injured -- *i.e.*, subject to the "brutal tax consequences that ensued" when HVB "prematurely" terminated their CARDS loan. (Opp. at 7). Indeed, plaintiffs emphasize that a loan lasting "only a *single* year . . . made no economic sense whatsoever." (Opp. at 41) (emphasis in the original). It is simply not plausible, based on plaintiffs' own allegations and arguments, that plaintiffs did not know they had been "injured" when HVB terminated their CARDS loan in December 2001. (Complaint ¶ 64). Plaintiffs did not file suit against HVB until more than six years later. Accordingly, under the applicable four year period of limitations, plaintiffs' RICO cause of action is time-barred. *See Republic Bank & Trust Co.*, 2010 U.S. Dist. LEXIS 36365, at *19 (courts should dismiss complaints as time-barred when it is "apparent from the face of the complaint that the time limit for bringing the claim has passed") (quotations and citations omitted).

### B. Plaintiffs' State-Law Claims Are Time-Barred

Like plaintiffs' RICO claims, plaintiffs' fraud, negligent, misrepresentation, breach of fiduciary duty,[5] aiding and abetting and conspiracy claims are each time-barred because plaintiffs knew they had been harmed as soon as HVB terminated their CARDS loan in December 2001.[6] Plaintiffs do not dispute that they knew they had been harmed no later than December 2001. Nor do plaintiffs address, much less distinguish, even one of the cases cited by HVB. Rather, plaintiffs argue that the applicable Kentucky periods of limitation were tolled until they had actual knowledge of HVB's "particular role in the CARDS scheme." (Opp. at 40). That is not the correct standard.

---

[5] Plaintiffs concede that their fiduciary duty claims are time-barred. (Opp. at 43-44).

[6] Plaintiffs' putative claims for punitive damages (which plaintiffs make no attempt to defend) and rescission are not "claims" at all, but *remedies* which can only be awarded following the adjudication of an otherwise viable cause of action. (Mtn. at 21). *See also Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 797 (6th Cir. 2009) ("Rescission is an equitable *remedy* . . .") (emphasis supplied). Plaintiffs have no viable causes of action.

8

The essential premise of plaintiffs' argument is that, pursuant to Kentucky's discovery rule, they had "*no* affirmative duty to exercise due diligence in discovering the fraud and misrepresentations." (Opp. at 42 (emphasis in original); *see also id*. at 40 ("there is no duty on the part of the injured party to exercise due diligence in discovery a fraud")). That premise is wrong. Kentucky law could not be more clear that plaintiffs have a duty to "exercise reasonable diligence to discover their cause of action and the identity of the tortfeasor within the time prescribed by the statute of limitations." *Fluke Corp.*, 306 S.W.3d at 56 (reversing court of appeals and reinstating summary judgment); *see also Combs v. Albert Kahn Associates, Inc.,* 183 S.W.3d 190, 199 (Ky. App. 2006) ("A person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints").[7]

Here, based on the allegations in the Complaint, plaintiffs knew that they had been deprived of the alleged foreign currency benefits and the supposedly associated tax benefits -- *i.e.*, harmed -- no later than December 2001. (Complaint ¶ 54, 64, 84). Plaintiffs also knew the "instrumentality" of that harm: HVB's termination of their CARDS loan. (*Id*.). Plaintiffs' claim that they did not have actual knowledge of HVB's "particular role in the CARDS scheme" until October 2008 is not only self-serving and suspect; it is irrelevant. Here, as in *Fluke Corp*., HVB's "*potential role* in causing the [alleged injury] that gave rise to this litigation was *immediately evident* from [HVB's termination of the loan] itself." *Id.*, 306 S.W.3d at 56 (emphasis supplied). That was "enough to trigger the limitations clock and to impose on [plaintiffs] the duty to discover the responsible parties." *Id*. at 64.

---

[7] The cases plaintiffs cite are not to the contrary and, in any event, would have been superseded by *Fluke Corp*. if they were. *Hernandez* and *Lemaster* stand for an inapposite "exception for confidential relationship[s]." *Boone v. Gonzalez*, 550 S.W.2d 571, 574 (Ky. Ct. App. 1977) (husband and wife) (citing *Lemaster v. Caudill, Ky*., 328 S.W.2d 276 (1959); *Hernandez v. Daniel, Ky.*, 471 S.W.2d 25 (1971)). Plaintiffs and HVB has never had any such "confidential relationship." Likewise inapposite is *McAnly v. Middleton & Reutlinger, P.S.C*, 77 F. Supp. 2d 810 (W.D. Ky. 1999) (applying *federal common law*, not Kentucky law, to toll statute of limitations applicable to Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*.).

9

Once the controlling law is understood, the analysis is straightforward. Five years is the longest period of limitations applicable to any of plaintiffs' state law claims. (Mtn. at 14-17).[8] Even assuming for the sake of argument that the discovery rule were applicable to all of plaintiffs' state law claims, they each expired no later than December 2006 -- five years after HVB terminated plaintiffs' CARDS loan in December 2001, and more than one year before plaintiffs filed suit against HVB in February 2008. Plaintiffs' state law claims are, therefore, time-barred. It is that simple.

### C. The DPA Does Not Save Plaintiffs' Time-Barred Claims From Dismissal

Plaintiffs' assertion that HVB has "violated the express terms of the DPA" is utterly baseless. (Opp. at 22). HVB's defense of this case and others is entirely consistent with its statement in the DPA that all participants in CARDS -- including Sussex's tax-evading clients, such as the Kermans -- knew that CARDS was a fraudulent tax shelter. (*See* Complaint Ex. F (DPA) at ¶ 19 ("all parties involved, including the clients/"borrowers," knew that the transactions would be unwound in approximately one year in order to generate the phony tax benefits sought by the client participants")); *see also Curtis Inv. Co., LLC*, 341 Fed. Appx. at 490 (noting that IRS had found that "all of the parties to the [CARDS] transaction, including [the taxpayers], knew that the transaction was intended to be unwound after one year"); *Sussex Fin. Enters.*, 2010 U.S. Dist. LEXIS 73884, at *39 ("The client could also receive a sizable tax benefit -- albeit one that *all* realized was of *questionable legality* -- within that first year") (emphasis supplied).

---

[8] Plaintiffs' assertion that their professional negligence and criminal commercial bribery claims are "not contested" is beyond disingenuous. (Opp. at 47). As HVB has already pointed out (Mtn. at 8, n. 6), it is clear from the Complaint itself that these claims are not even directed at HVB. (*See* Complaint ¶ 116 ("The Kermans have a [commercial bribery] claim against Chenery and Hahn"); *id* ¶ 134 ("Chenery and Hahn breached their [professional] duties to Plaintiffs")). Even if these claims were directed at HVB, they would be time-barred. *See Harralson v. Monger*, 206 S.W.3d 336, 339 (Ky. 2006) (professional negligence claims must be "filed within one year [of . . .] date when the cause of action was or reasonably should have been discovered by the injured party"); KRS § 500.050 (one-year state statute of limitations for commercial bribery).

10

In any event, under the express terms of the DPA, any purported "violation" of its terms would have no impact on the *civil* statutes of limitation at issue in this action. (*See* Complaint Ex. F (DPA) at ¶ 11 ("HVB agrees to toll . . . the running of the *criminal* statute of limitations for a period of 5 years") (emphasis supplied)). Even if the DPA had any bearing on plaintiffs' civil statutes of limitation, it could *only* be invoked by the United States Attorney's Office, *not* plaintiffs. (*Id.* at ¶ 13 ("a one-year extension of the deferral of prosecution may be imposed at the sole discretion of the Office"); *id.* at ¶ 14 ("The decision as to whether any such contradictory statement will be imputed to HVB . . . shall be at the sole discretion of the Office")).

### III. Plaintiffs' Claims Fail For Independent, Alternative Reasons

#### A. Plaintiffs' RICO Claims Are Barred By The PSLRA

In its Motion (Mtn. at 11-12), HVB established that Sussex's RICO claim is barred by the PSLRA because they could have been brought as securities fraud claims. *See* 18 U.S.C. § 1964(c); *Schwartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007). In opposition (Opp. at 25-38), plaintiffs argue that the promissory note they purchased and sold[9] in connection with their CARDS transaction is not a "security" for purposes of the securities laws. Plaintiffs are wrong.

A "note is presumed to be a 'security.'" *Reves v. Ernst & Young*, 494 U.S. 56, 67 (1990). The presumption can be rebutted only if the note lacks the *indicia* of a security set forth in *Reves*. *Id.* at 60-61.[10] Here, accepted at face value, the promissory notes have at least three of the four *indicia*: (i) the notes were intended to "finance substantial investments" (*SEC v. J.T. Wallenbrock & Assocs.*, 313 F.3d 532, 538 (9th Cir. 2002)); (ii) the notes were "offered and sold" to numerous people (enough that the IRS issued two notices describing the transaction and declaring CARDS to be an abusive tax shelter) (*id.* at 539); and (iii) a "reasonable member of the

---

[9] Plaintiffs do not dispute that the note was "sold" for purposes of federal securities laws.

[10] Plaintiffs implicitly concede that *Reves* established a rebuttable presumption by asserting that "notes are not *automatically* presumed to fall within the PSLRA." (Opp. at 28) (emphasis supplied).

11

investing public would consider these notes as investments." *Id*. "Failure to satisfy one of the [four *Reves*] factors is not dispositive; they are considered as a whole." *Id*. at 537 (promissory notes purportedly secured by accounts receivable constitute securities).

Plaintiffs do not even attempt to rebut the *Reves* presumption. Instead, plaintiffs' assert that "most courts have expressly ruled that the CARDS transactions are not securities." (Opp. at 29). Once again, that is just not true. *Not one court* has decided whether the promissory note purchased and sold in connection with every CARDS transaction constitutes a "security." The only court to even touch on the issue stated in *dicta* that a CARDS promissory note is "likely a 'security' within the scope of the PSLRA." *Curtis Inv. Co.*, 2007 U.S. Dist. LEXIS 94012, at *36. In short, because CARDS promissory notes qualify as securities, plaintiffs' RICO claim could have been brought as a securities fraud claim and is, therefore, barred by the PSLRA as a matter of law.[11]

### B. Plaintiffs Fail To State A Fraud Or Misrepresentation Claims

In its Motion (Mtn. at 17-19), HVB established that plaintiffs cannot show reasonable reliance as a matter of law -- essential elements of both their fraud and misrepresentation claims -- because HVB's alleged oral representations contradict the express terms of the Credit Agreement. *Fletcher v. Branch Banking & Trust Corp.*, 2007 U.S. Dist. LEXIS 70300, at *13 (W.D. Ky. Sept. 21, 2007). As HVB pointed out in its Motion (Mtn. 19), the District Court for the Northern District of Georgia dismissed a fraud claim asserted against HVB by one of Sussex's tax-evading clients in *Curtis Inv. Co.* for precisely this reason, among others, holding that it was "simply unreasonable for [plaintiffs] to rely on any statement by any defendant that HVB would not exercise the repayment rights specifically reserved to it in the Credit

---

[11] There is no dispute that "'enterprise' and 'pattern of racketeering activity' are separate elements" of a RICO claim. *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985). Missing the point completely, plaintiffs argue in opposition that they can use the same *evidence* to *prove* both elements. (Opp. at 31).

Agreement." *Curtis Inv. Co.,* 2007 U.S. Dist. LEXIS 94012, at *26 n. 11.[12]  Moreover, only last week, the District Court for the Northern District of California held that the "Credit Agreement is not reasonably susceptible of any reading other than the one clear from the plain text of the agreement, giving HVB sole discretion to call the loan after a year." *Sussex Fin. Enters.*, 2010 U.S. Dist. LEXIS 73884, at *37-38.[13]  As a result, because a "party may not, as a matter of law, justifiably rely on a representation that is patently at odds with the express provisions of a written contract," the court dismissed plaintiffs' fraud claim and granted summary judgment in favor of HVB. *Id.* at *40.[14]

Either negligently or intentionally (because they have no viable response to HVB's actual argument), plaintiffs badly misconstrue HVB's argument.  As a result, plaintiffs' opposition is non-responsive.  Plaintiffs' argue that the "no-reliance" clause in the Credit Agreement cannot be enforced because a party "cannot contract against his fraud." (Opp. at 48).[15]  That may be so, but it has absolutely no bearing on the reasonableness of any purported reliance on some unspecified oral expression of HVB's supposed intent to maintain the loan for thirty years when "the Credit Agreement unambiguously gives HVB sole discretion to withdraw from the funding of the

---

[12]  Plaintiffs' assertion that HVB only mentioned *Curtis Inv. Co.* "in passing" in the Motion (Opp. at 39) makes one wonder whether plaintiffs even read HVB's Motion.  HVB block quotes and discusses *Curtis Inv. Co. five times* in the Motion.

[13]  "The terms in the Credit Agreements governing each transaction [including the one at issue here] were substantially similar." *Sussex Fin. Enters.,* 2010 U.S. Dist. LEXIS 73884, at *4; *see also id.* at *39.

[14]  Plaintiffs' fraud and misrepresentation claims also fail for lack of causation.  "Because the parties' ability to wind up the loan earlier than thirty years was hard-wired into CARDS, HVB's lack of intent to renew after a year cannot be a cause" of plaintiffs' alleged injuries.  *Sussex Fin. Enters.*, at *51-52; *see also id.* at *53 ("Regardless of the parties' intent . . . there is no genuine indebtedness and [the] client has the opportunity to claim an inflated tax loss").

[15]  Characterizing the Credit Agreement as an "adhesion" contract is preposterous.  (Opp. 49). The agreement is "an exhaustive 41-page document that addresses every material aspect of the agreement between the lender and the borrower . . . ." *Sussex Fin. Enters.*, 2010 U.S. Dist. LEXIS 73884 at *30.

CARDS loans after a year." *Sussex Fin. Enters.*, 2010 U.S. Dist. LEXIS 73884 at *30-31. Indeed, "not only does HVB have the sole discretion to demand prepayment on the loan [annually], but *mere inaction by the Bank* . . . triggers mandatory prepayment by the borrower." *Id.* at *31 (emphasis supplied).[16] Accordingly, like the district courts in *Curtis Inv. Co.* and *Sussex Fin. Enters* -- even if plaintiffs' claims were timely (which they are not) -- the Court should dismiss plaintiffs' fraud and misrepresentation claims because plaintiffs cannot show reasonable reliance as a matter of law.

### C. Plaintiffs Collateral Estoppel Argument Is Manifestly Meritless

Plaintiffs' collateral estoppel argument (Opp. at 53) has no bearing whatsoever on HVB's statute of limitations arguments, PSLRA argument or the viability of any of the various Kentucky common law and statutory claims plaintiffs assert. Apart from its prior dismissal motions in this action, HVB has never litigated, and no court has ever decided, whether plaintiffs in this action filed suit against HVB on a timely basis. HVB has never litigated, and no court has ever decided, whether plaintiffs in this action have adequately pleaded Kentucky common law or Kentucky statutory claims. Likewise, no court has decided whether the Complaint in this action sufficiently pleads RICO claims against HVB. *Cf., Sussex Fin. Enters.*, 2010 U.S. Dist. LEXIS 73884, at *25 (rejecting collateral estoppel based on the *Rezner* decision because "RICO is not some undifferentiated 'issue,' but rather a cause of action with multiple legal elements, each of which requires proof of numerous independent factual predicates") (quotations omitted). And, no court has ever decided whether the PSLRA bars RICO claims relating to CARDS based on the assumption of the promissory notes. *See Curtis Inv. Co.*, 2007 U.S. Dist. LEXIS 94012, at *36 (stating in *dicta* that a CARDS promissory note is "likely a 'security' within the scope of the PSLRA").

---

[16] In any event, as this Court recently held, the expression of an "alleged 'intent' to do something is not an actionable statement. It is not a past or present material fact, but rather a forward-looking statement about what a party may do in the future." *Republic Bank & Trust Co.*, 2010 U.S. Dist. LEXIS 36365, at * 11.

14

IV.     **The Court Should Strike Plaintiffs' Damages Claim**

As HVB established in its Motion, in the event the Court declines to dismiss the Complaint, it should strike plaintiffs' damages claim pursuant to Rule 12(f) to the extent plaintiffs seek recovery of back taxes, interest and/or penalties payable to the IRS or the State of Kentucky. (Mtn. at 22). In opposition, plaintiffs concede that back taxes are not recoverable. (Opp. at 56). Plaintiffs have previously conceded that the Sixth Circuit held in *Stone* that "interest for back taxes" is not recoverable. (Dkt. at 166 at 1 n.3). *See also Stone v. Kirk*, 8 F.3d 1079, 1093 (6th Cir. 1993) (plaintiffs had use of tax dollars until "belatedly turned over to the IRS"). Plaintiffs make no effort to distinguish the case law cited by HVB establishing that tax penalties are also not recoverable as damages. *See Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1051 (2d Cir. 1985) (penalties are not "damages" but "compensation to IRS for the use of money IRS would have had if [plaintiff] had not wrongly withheld it") (*vacated and remanded on other grounds*). Accordingly, because the back taxes, interest and penalties that plaintiffs seek are not recoverable as a matter of law, HVB's motion to strike plaintiffs' claims for such damages should be granted.

15

## **CONCLUSION**

Based on the foregoing argument and authority, all claims against HVB in this action should be dismissed with prejudice.

DATED: July 26, 2010

Respectfully Submitted,

KASOWITZ BENSON TORRES & FRIEDMAN LLP

By:   /s/ Trevor J. Welch
Mark P. Ressler (admitted *Pro Hac Vice*)
Trevor J. Welch (admitted *Pro Hac Vice*)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

-and-

BOEL STOPHER & GRAVES LLP
Edward H. Stopher
E-mail: estopher@bsg-law.com
Raymond G. Smith
E-mail: rsmith@bsg-law.com
AEGON Center, Suite 2300
400 West Market Street
Louisville, Kentucky 40202

*Counsel to* Bayerische Hypo- und Vereinsbank AG, HVB Risk Management Products, Inc. and HVB U.S. Finance, Inc.