UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARK L. KERMAN, et al.                                                                      PLAINTIFFS

v.                                                                   CIVIL ACTION NO. 3:06CV-338-S

CHENERY ASSOCIATES, INC., et al.                                                     DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Bayerische Hypo- und Vereinsbank and HVB U.S. Finance, Inc. (collectively "HVB"), to dismiss the Fourth Amended Complaint as to them.

The plaintiff, Mark Kerman was the founder of Kenmark Optical in Louisville, Kentucky. In the summer of 2000, he and his wife were approached by an individual named Craig Stone about an investment opportunity called a Custom Adjustable Rate Debt Structure (known as a "CARDS transaction"). Believing that the transaction would provide them with Euros to conduct business in Europe and that it would provide them certain tax advantages on the investment, they entered into a contract with an entity called Chenery Associates to invest $5,000,000.00, agreeing to pay a flat fee of $500,000.00 for the transaction. Ultimately, the transaction was found by the Internal Revenue Service to be a potentially abusive tax shelter, as defined by the Internal Revenue Code, and the Kermans were charged nearly $500,000.00 in penalties for the year 2000.

On February 23, 2006, HVB entered into a Deferred Prosecution Agreement with the United States Attorney for the Southern District of New York, in connection with the Department of Justice's investigation into illegal tax shelters.

The Kermans filed suit against Chenery, attorney R.J. Ruble, and the law firm of Sidley, Austin, Brown & Wood, LLP, for fraud, conspiracy, commercial bribery, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 on June 13, 2006. They alleged that they were defrauded by the defendants when they were induced to invest in the CARDS transaction and paid Chenery a large fee on the promise that the investment provided a legal means to reduce their tax liability when, in fact, the defendants knew that their scheme would be disallowed by the IRS. The Kermans alleged that they were solicited to participate in the CARDS transaction and were promised a favorable opinion from a major law firm which would eliminate the risk of underpayment penalties from the IRS. The claims were refined through a number of amendments to the complaint. In a Third Amended Complaint filed in February of 2008, the Kermans added the HVB entities as defendants. It set out the alleged role of HVB in this matter. The Kermans alleged that HVB "acted as the bank in approximately twenty-nine CARDS transactions that resulted in over $265 million in losses claimed by participants and the avoidance of over $91 million in income taxes...In return for substantial, guaranteed fees, HVB and the other CARDS Promoters and other con-conspirators implemented and caused to be implements the CARDS transactions and generated and caused to be generated false and fraudulent documentation to support the transactions..." TAC, ¶¶ 43, 44. HVB was included in various claims made against "the defendants." There were few specifics concerning the alleged conduct of HVB beyond the three paragraphs designated The Role of HVB." TAC, ¶¶ 42-44.

Leave to file a fourth amended complaint was sought in April 2009 amidst briefing of HVB's motion to dismiss the third amended complaint. The court permitted the filing of the fourth amended complaint which then superseded the third, stating the following claims:

(1) Civil RICO

(2) Civil RICO

(3) Breach of Fiduciary Duty

(4) Commercial Bribery - Chenery and Hahn

(5) Violation of KRS 141.990

(6) Intentional Misrepresentation and Fraud

(7) Professional Negligence - Chenery and Hahn

(8) Negligent Misrepresentation

(9) Rescission

(10) Civil Conspiracy

(11) Aiding and Abetting Breach of Fiduciary Duty

(12) Punitive Damages

As noted in the recent decision of *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 707 F.Supp.2d 702, 707 (W.D.Ky. 2010), the retooling of the old *Conley v. Gibson* standard for dismissal requires a more discerning eye in evaluating motions to dismiss:

> The Supreme Court has recently revised its understanding of the pleading standards under the Civil Rules. A complaint now "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(*quoting Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). This raises the bar from where *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) had left it: Whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqbal* (along with its predecessor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) advises us to toss out a case unless the allegations meet some standard of plausibility. *Courie*, 577 F.3d at 629-30. While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw

unwarranted factual inferences. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

The Kermans urge, however, that the motions must be considered under a summary judgment standard, as they refer to matters outside the pleadings. We find, however, that we may limit our review to those items referenced in the pleadings without alteration of the dismissal standard.

> Generally, if a court considers matters outside of the pleadings on a 12(b)(6) motion to dismiss, the motion must be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d)..."Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings." *Greenburg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)(citations omitted). The Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

*River City Rentals, LLC v. Bays*, 2008 WL 5000170 (W.D.Ky. Nov. 21, 2008); *see also Thomas v. Publishers Clearing House, Inc.*, 29 Fed.Appx. 319 (6th Cir. 2002)("Rule 10(c) allows the incorporation of exhibits or writing attached to a pleading...and 'makes them an integral part of the pleading for all purposes.' 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327 (2d ed. 1990)").

I.

The court finds that the First and Second Claims alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") are time-barred. The Supreme Court has affirmed a 4-year statute of limitations for RICO claims. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 17 S.Ct. 2759, 97 L.Ed.2d 121 (1987). The limitations period runs "from the moment a diligent plaintiff discovered or should have discovered an injury to itself, not

from the time it discovered the pattern of predicate acts." *Curtis Investment Co., LLC v. Bayerische Hypo-Und Vereinsbank, AG*, 2007 WL 4564133 (N.D.Ga. Dec. 20, 2007), *quoting Rotella v. Wood*, 528 U.S. 549, 558-59, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).

The Kermans entered into a purported thirty-year credit agreement the duration of which was crucial to the success of the transaction in generating the tax benefit sought by the Kermans. The Kermans allege that "the length of the loan was an important factor in evaluating the tax and business consequences of the transaction. If the Kermans had known that from the inception it was HVB's intent that the loan would be called within one year, they would not have entered into the transaction." Fourth Amend. Compl., ¶ 64. HVB terminated the credit agreement in December, 2001. As noted in *Curtis Investment Co.*, with the termination of the agreement, the Kermans "knew [they] had lost both the investment and tax advantages [they] intended to gain from the CARDS loan. Even if [the Kermans] did not...know of HVB's fraudulent intent at the time of contracting, [the Kermans] had actual knowledge in 2001 of HVB's alleged breach of its promises and of the harm that would ensue." *Id.* at 10. Therefore, the RICO four-year limitations period expired in December, 2005. *See also Sims v. Ohio Casualty Insurance Co.*, 151 Fed.Appx. 433, 436 (6th Cir. 2005).

The existence of an on-going criminal prosecution does not to toll the running of the limitations period with respect to these RICO claims. The Kermans urge the court to apply the suspension of limitations provision from the Clayton Act, 15 U.S.C. § 16(I), to the RICO claims in this case. In *Pension Fund Mid-Jersey Trucking Industry v. Omni Funding Group*, 687 F.Supp. 962 (D.N.J. 1988), the court found that the Clayton Act provision suspended the limitations period for private civil claims when the United States had instituted a parallel antitrust action. The holding in

*Pension Fund* has not been followed by any other court. The court itself noted that it was deciding a "novel issue." *Id.* at 963. In the absence of any binding authority which directs us to do so, the court will decline to suspend the limitations period on these RICO claims.

Further, were we to follow the lead of the *Pension Fund* court and find that we must borrow the tolling and suspension provisions of the Clayton Act in conjunction with the four-year limitations period, *West v. Conrail*, 107 S.Ct. 1538 (1987), the suspension provision is not applicable on the facts before us. In *Pension Fund*, the court quoted from the Senate Report concerning modifications made to the tolling provisions:

> There are many instances where the statute of limitations as to a private cause of action may nearly have expired before suit is instituted by the Government under the antitrust laws. Although the statute is tolled during the pendency of those proceedings brought by the United States, the plaintiff in a treble-damage action may find himself hard pressed to reap the benefits of the Government's suit if, upon its conclusion, he has but a short time remaining to study the Government's case, estimate his own damages, assess the strength and validity of his suit, and prepare and file his complaint. To alleviate such difficulties, the present bill would extend the tolling period not only for the duration of the Government's antitrust suit, but for one year thereafter.

*Id.* at 964, *quoting* 2 U.S. Code Cong. and Admin. News, 84th Cong. 1955, at 2328, 2332. The court noted that "Courts have recognized that the Clayton Act's tolling provisions plainly reflect Congress's desire to make available to private litigants the benefits of prior Government antitrust litigation. [citations omitted]." *Pension Fund*, 687 F.Supp. at 964.

In this case, however, the four-year limitations period expired prior to the institution of any criminal proceedings against HVB. The limitations period expired in December, 2005 and the United States and HVB entered into a Deferred Prosecution Agreement on February 13, 2006. The Agreement states that "HVB will consent to the filing of a one-count Information in the United States District Court for the Southern District of New York" which would be subject to deferral for

a period of eighteen months from the date of the signing of the agreement. Agt., ¶¶ 1, 9. There is nothing in *Pension Fund* or the language of the Clayton Act statute to suggest that an investigation by the United States unaccompanied by civil or criminal prosecution suspends the running of the limitations period. Once the limitations period expired in 2005, the later filing of an information against HVB did not revive the claims. Additionally, the Agreement itself contemplated that civil proceedings by private parties might occur contemporaneously with the on-going criminal investigation:

> ...HVB may raise defenses and/or assert affirmative claims in any civil proceedings brought by private parties as long as doing so does not contradict the Statement of Facts or such representations...

Agt., ¶ 14. Thus there is no basis in this case to suspend the limitations period.

II.

The Kermans concede that their claim for breach of fiduciary duty (Third Claim) is time-barred. Resp. p. 43. They assert a claim for aiding and abetting a breach of fiduciary duty (Eleventh Claim) which is also time barred. *Bariteau v. P.C. Financial Services Group, Inc.*, 285 Fed.Appx. 218, 223 (6th Cir. 2008)("No Kentucky case...has extended the [discovery] rule to fiduciary-breach actions"). The Fourth Claim (Commercial Bribery) and Seventh Claim (Professional Negligence) are not directed at HVB.

The Fifth Claim alleges that the defendants caused the Kermans to file false tax returns, and that they are potentially liable for civil and criminal penalties including attorneys fees under the Kentucky Revenue Code. Pursuant to KRS 446.070, the Kermans claim that they may recover against the defendants for their violations of the Kentucky statutes. Fifth Claim, ¶¶ 117-122; Resp.,

p. 55 ("In other words, the Kermans seek reimbursement for any of their own violations of the Kentucky Revenue Code which they incur as victims of the fraudulent CARDS scheme.").

The Kermans cite no authority for this claim other than the plain language of the statute which provides that "a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070. The complaint alleges that "[the action of the CARDS Promoters are in violation of KRS 141.990."

KRS 141.990(1) states that "any individual, fiduciary, corporation, employer, or other person who violates any of the provisions of this chapter shall be subject to the uniform civil penalties imposed pursuant to KRS 131.180." The Kermans urge that under KRS 141.990(6), they and HVB may be subject to penalties for in connection with the filing of a false return. However, the subsection states that

> *Any person* who willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under this chapter of a return...which is fraudulent...shall be guilty of a Class D Felony.

KRS 141.990(6).

The Kermans have not shown that HVB is a "person" under this statute. Subsection (1) differentiates between any "individual, fiduciary, corporation, employer, or other person..." Subsection (2) addresses "any individual," while subsection (3) addresses "any corporation." Subsection (6), however, refers to any "person." In the definitions for Chapter 141 on Income Taxes, "'person' means 'person' as defined in Section 7701(a)(1) of the Internal Revenue Code. A quick visit to that section reveal that "person" means "an individual, a trust, estate, partnership,

association, company or corporation." Therefore, HVB may arguably have violated KRS 141.990(6). To the extent that the Kermans seek to recover civil and criminal penalties and attorneys fees which they allege they would otherwise not have incurred but for HVB's violation of KRS 141.990(6), they appear to state a claim for relief. However, the analysis does not stop there.

In *Freschi v. Grand Coal Adventure*, 767 F.2d 1041, 1051 (2d Cir. 1985), the Second Circuit found that

> ...the interest and penalties IRS assessed against the [taxpayer] were not consequential damage; rather they were simply compensation to IRS for the use of money IRS would have had if the [taxpayer] had not wrongly withheld it. The interest and penalties were not, the trial court correctly observed, really a damage suffered by the [taxpayer] at all, but a return by him of what would otherwise be a windfall resulting from his opportunity to use money to which he was not entitled.

The Kermans do not offer contrary authority.[1] However, *Freschi* is not binding authority for this court and it is slim on analysis. We find some reason to differentiate between damage claims for interest and penalties assessed against a delinquent taxpayer. Interest assessed against the taxpayer is not a consequential damage, but rather a disgorgement by the taxpayer of the sums gained from the wrongful retention of the monies owed. *See Stone v. Kirk*, 8 F.3d 1079, 1093 (6th Cir. 1993). However, a better argument may be made for the recovery of penalties assessed against the taxpayer, as these sums arguably would not have been assessed against the taxpayer but for the alleged wrongful conduct of the defendants and bear no relation to the time value of the monies wrongly withheld from the IRS. Rather, penalties are a disincentive to not paying tax obligations when due.

---

[1] *Freschi* precluded recovery of civil and criminal penalties. The *Freschi* case also addressed a claim for interest. However, interest is not in issue here, as there is no mention of interest in the Fifth Claim.

The court will decline to preclude any elements of a damage recovery under the Fifth Claim at this time.

They also seek to recover attorneys fees. HVB has not addressed this aspect of the claim other than to state that HVB's conduct did not amount to a violation of KRS 191.990(6). We leave to another day this argument on the merits of the claim.

III.

The Sixth and Eighth Claims (Intentional Misrepresentation/Fraud and Negligent Misrepresentation) are barred by the five-year statute of limitations. KRS 413.120(12). The limitations period commences on a claim for fraud or misrepresentation when it is "discovered or, in the exercise of reasonable diligence, should have been discovered." *Hernandez v. Daniels,* 471 SWAT 25, 26 (Ky. 1971); *McMurray v. Batts*, 2005 WL 2429109 (W.D.Ky. Sept. 30, 2005). The recent case of *Fluke Corp. v. LeMaster*, 306 S.W.3d 55 (Ky. 2010) states that "[an injured party has an affirmative duty to use diligence in discovering the cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of this entire claim." *Id.*, *quoting Hazel v. General Motors Corp.*, 863 F.Supp. 435, 438-39 (W.D.Ky. 1994). Thus in December of 2001 when the CARDS loan was called and knew they had lost the investment and associated tax advantages they hoped to gain, they had a duty to investigate potential claims for their injuries.

The Kermans' assertion in their response that they did not discover HVB's *particular role* until Roy Hahn's 2008 deposition and Silvie DeMetrio's 2009 deposition. Resp., p. 40-41. However, this simply does not cure the failure to pursue the claims within the limitations period.

The Kermans knew they had been injured and the cause of the injury in December of 2001. They simply failed to further investigate the metes and bounds of their claims. As The Kermans did not timely file them, the Sixth and Eighth claims must therefore be dismissed.

IV.

The Ninth Claim seeks rescission of the Credit Agreement and refund of fees it paid for the "services" provided to the Kermans. The Kermans contend that these "services" had no value, as the CARDS loan was recalled within the first year and they did not receive the benefit of their bargain. HVB initially urges that the Ninth Claim must fail because there is no current agreement between the Kermans and HVB. However, they abandon this argument in their reply, stating in footnote that rescission is an equitable remedy "which can only be awarded following the adjudication of an otherwise viable cause of action." Reply, p. 8, fn. 6. HVB seeks dismissal only insofar as it contends that all other causes of action must be dismissed. HVB will not succeed in obtaining dismissal of all claims against it. The court will also deny dismissal of the Ninth Claim.

V.

The Tenth Claim asserts a civil conspiracy among the defendants to perpetrate the wrongful schemes against the Kermans. KRS 413.140(1)(c) provides a one-year limitations period for civil conspiracy. We conclude that the same analysis must be applied to this claim as to the claims for fraud and misrepresentation.

The Kermans urge that the cause of action does not accrue until a plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but

also that his injury may have been caused by the defendant's conduct." *Manly v. Middletown & Reutlinger, P.S.C.*, 77 F.Supp.2d 810, 815 (W.D.Ky. 1999)(*quoting Hazel, supra.,* and *Perkins v. Ne. Log Homes*, 808 S.W.2d 809, 818 (Ky. 1991)). In December of 2001 when the CARDS loan was called, knew they were injured and knew at whose hands they had suffered this injury. They had a duty to exercise reasonable diligence in attempting to ascertain the nature and extent of their claims within the limitations period. They failed to timely file a conspiracy claim. *Bowden v. City of Franklin*, 13 Fed.Appx. 266, 275 (6th Cir. 2001) Therefore, the Tenth Claim must be dismissed.

For the reasons set forth herein, the motion of HVB to dismiss will be granted in part and denied in part.² A separate order will be entered herein this date in accordance with this opinion.

**IT IS SO ORDERED.**

---

²The Kermans seek an award of punitive damages, urging that the defendants' conduct was malicious, willful and wanton. As a number of the claims survive the motion to dismiss, the punitive damage claim also remains viable.