UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARK L. and LUCY M. KERMAN                                              PLAINTIFFS

v.                                                            NO. 3:06-CV-00338-CRS

CHENERY ASSOCIATES, INC., *et al.*,                                     DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion by the Defendants, Bayerische Hypo -und Vereinsbank AG and HVB U.S. Finance, Inc., f/k/a HVB Structured Finance, Inc. (collectively, "HVB")[1], to dismiss the Plaintiffs', Mark L. and Lucy M. Kerman ("the Kermans"), claims for Statutory Violations (Claim V), Rescission (Claim IX), and Punitive Damages (Claim XII) against HVB in their Fourth Amended Complaint. DN 224; DN 183.  Fully briefed, this matter is now ripe for adjudication.  Having considered the parties' respective positions, we conclude that the Plaintiffs' remaining claims against HVB fail as a matter of law.  For the reasons set forth below, the Court will grant the Defendant's motion to dismiss. DN 224.

## I.

This case came before the Court upon removal nearly nine years ago. DN 1.  The parties' history before and after is well-chronicled, but we need only delve into those parts of their

---

[1] A number of defendants remain named parties in this litigation; they include three entities – Chenery Associates, Inc., Chenery Management, Inc., and Sussex Financial Enterprises, Inc. – who the Court understands are defunct. The individual defendant remaining, Roy Hahn, and these defunct entities were give a period to retain substitute counsel after the withdrawal of their last counsel of record. DN 219.  They have not done so for over a year, nor has Roy Hahn appeared on his own behalf.  It is unclear the extent to which HVB's arguments for dismissal would apply to the other remaining defendants.  In any event, the Kermans have not pursued their claims against these defendants for nearly four years.

1

relations that are relevant to the Defendant HVB's now-pending motion to dismiss.[2]   These undisputed facts are as follows.

Back in 2011, the Court dismissed the Kermans' First, Second, Third, Sixth, Eighth, Tenth, and Eleventh claims as against HVB. DN 205.  We denied dismissal of the Kermans' Fifth, Ninth, and Twelfth claims against HVB, however, and these claims have remained.  Then on March 8, 2011, as this action pended, the Kermans took action to challenge the IRS's treatment of a "CARDS transaction" they had participated in – specifically, the IRS's imposition of a 40-percent penalty and disallowance of a $4,251,389 loss claimed from that transaction.  Not coincidentally, that transaction is the impetus for this suit.  The Tax Court ultimately denied the Kermans' claimed loss and upheld the penalty, explaining that the CARDS transaction was an "economic sham" that would have "seem[ed] to a reasonable person to be 'too good to be true.'" *Kerman v. C.I.R.*, 101 T.C.M. (CCH) 1241, *20 (T.C. 2011), *aff'd*, 713 F.3d 849 (6th Cir. 2013). We were then made aware that the Kermans would appeal the Tax Court decision to the Sixth Circuit, so we stayed the current action pending resolution of that appeal. DN 208.  On appeal, the Sixth Circuit affirmed the Tax Court decision.

HVB now asks us to consider the viability of the Kermans' remaining claims against HVB in light of the affirmed Tax Court decision.  HVB moved the Court for leave to "file a second motion to dismiss on a theory of collateral estoppel," which we granted, and HVB so filed.  In the Kermans' response to HVB's motion, the Kermans abstain from disputing HVB's collateral estoppel argument and instead concede that "[i]ndisputably, the[y] participated in the abusive tax-shelter in conjunction with HVB." DN 227, p. 5.  HVB now contends that this admission is fatal to the Kermans' remaining claims against it under the theory of *in pari delicto*.

---

[2] A more complete factual record is set forth in DN 205.

## II.

To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009):

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra.*] at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S.Ct. 1955 (bracket omitted).

As noted in *Southfield Education Association v. Southfield Board of Education*, No. 13-1600, 2014 WL 2900928 (6th Cir. June 26, 2014), "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Twombly*, 550 U.S. at 561-64." *Southfield Ed. Assoc.*, 2014 WL 2900928 at *2. "The factual allegations, assumed to be true, . . . must show entitlement to relief" under "some viable legal theory." *Id.* at *2, (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

## III.

HVB has moved the Court for dismissal of the remaining claims pending against it in the Fourth Amended Complaint ("FAC") – Ky. Rev. Stat. Ann § 446.070 (Claim V), Rescission (Claim IX), and Punitive Damages (Claim XII). It contends that the Kermans' claims under KRS § 446.070 and for rescission fail as a matter of law under the common-law doctrine of *in pari delicto*. DN 224-1. *In pari delicto* is an equitable defense that generally "refers to the

3

plaintiff's participation in the same wrongdoing as the defendant." *In re Nat'l Century Fin. Enterprises, Inc.*, 783 F. Supp. 2d 1003, 1014 (S.D. Ohio 2011) (citing *Bubis v. Blanton*, 885 F.2d 317, 321 n. 1 (6th Cir.1989)); *Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379, 1382 (9th Cir.1977)); *see also* 27A Am. Jur. 2d Equity § 103.  HVB also argues that because *in pari delicto* mandates dismissal of the Kermans' statutory and rescission claims, their punitive damages claim must fail as well.  We will assess these arguments in turn.

### A.  *In Pari Delicto*

The common law docntrine *in pari delicto* is a phrase that is short for the maxim *in pari delicto potior est condition defendentis*, which means: "In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S. Ct. 2622, 2626, 86 L. Ed. 2d 215 (1985) (quoting Black's Law Dictionary 711 (5th ed. 1979) (alternation in original)).  When applied, it serves as a defense that prevents two parties whose wrongdoing are found to be *in pari delicto* from recovering from one another for any damages that arose from that joint wrongdoing. *Bateman Eichler*, 472 U.S. at 306, 105 S.Ct. 2622 (footnotes omitted).  Courts apply the doctrine based on "two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *See id.; see also In re Dublin Securities, Inc.*, 133 F.3d 377, 380 (6th Cir.1997) ("'No Court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.'").

In one germane application of the doctrine, a Kentucky court found that when two parties participate in a tax evasion transaction, they are deemed to be *in pari delicto*. *Eline Realty Co. v. Foeman*, 252 S.W.2d 15, 19 (Ky. 1952)(citing *Stacy v. Williams*, 253 Ky. 353, 69 S.W.2d 697; *Middlesboro Home Telephone Co.*, *v. Louisville & N. R. Co.*, 214 Ky. 822, 284 S.W. 104).  This

is true even if the plaintiff was induced to enter the transaction. *Id*.  Here, the Kermans' admit that "[i]ndisputably, [they] participated in the abusive CARDS tax-shelter with HVB and the other Defendants." DN 227, p. 5.   Moreover, they do not even dispute that, as a result, they are *in pari delicto* with HVB. *Id*.   Instead, they argue that, regardless of whether they are *in pari delicto* with the Defendants, the defense does not bar their claims for rescission or under KRS § 446.070 in this instance.  We address these arguments in turn.

### 1.   Claim for Rescission

Where parties are *in pari delicto*, a court will not grant equitable relief – like rescission – between them. *Schmidt v. Schmidt*, 343 S.W.2d 817, 819 (Ky.1961).   As stated above, the Kermans do not dispute that they are *in pari delicto* with the Defendants.   On the contrary, they argue that the doctrine of *in pari delicto* is inapplicable to their claim for rescission because "joint *intentional* tortfeasors *in pari delicto* can recover from each other" under KRS § 411.182. DN 227, p. 5 (emphasis in original).   But this statute, which provides for allocation of fault in *tort actions*, *see id.*, is immaterial here.

The Kermans and HVB cannot be "joint tortfeasors" under § 411.182 because neither party has committed, or allegedly committed, any torts, and the Kermans have no such claims against HVB.  By its express terms, § 411.182 applies only to "*tort actions* . . . involving fault of more than one (1) party to the action." Ky. Rev. Stat. Ann § 411.182(1); *Kentucky Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 800 (Ky. 2005) (noting that this provision limits itself to tort actions).   But the Kermans and HVB were merely joint participants in a transaction that resulted in a tax penalty and potential criminal repercussions. *Kerman v. C.I.R.*, 101 T.C.M. (CCH) 1241 at *8, 20; *see* Ky. Rev. Stat. Ann § 141.990 (West).   Not once during their storied relations has any party or governmental body alleged that either party has committed any torts

5

whatsoever, let alone jointly.  Nor have the Kermans cited to any authority suggesting that KRS § 411.182 encompasses any actions other than those based in tort.

In fact, in *Kentucky Farm Bureau Mutual Insurance Co. v. Ryan*, the Supreme Court of Kentucky explained that, even if a contractual claim *sounds in tort*, it does not fall within the purview of KRS § 411.182 so long as it is based in contract. 177 S.W.3d 800, 802 (Ky. 2005). Moreover, compare the situation at hand to that in *Sandoz Inc. v. Commonwealth of Kentucky ex rel. Jack Conway*, 405 S.W.3d 506 (Ky. Ct. App. 2012).   In *Sandoz*, the Commonwealth of Kentucky brought action against two pharmaceutical companies for reporting inflated prices on Medicaid-eligible prescription drugs in violation of numerous Kentucky statutes. *Id.* at 508-09. The doctrine of *in pari delicto* nonetheless prohibited the Commonwealth from recovering because "[t]he Commonwealth was entirely complicit in th[e wrongful] system of pricing." *Id.* at 512.  As such, the parties were *in pari delicto* by virtue of statutory violations, not any common law torts, and any claims between them were resultantly barred. *See id.*  This reasoning applies to the situation at hand; the parties are *in pari delicto* by virtue of their tax violations, not any joint torts.  These holdings leave no doubt that this provision is limited to tort-based actions.  Because this is not the case here, the Kentucky Tort Reform's allocation-of-fault framework is irrelevant.

Because the Plaintiff and Defendants are not "joint tortfeasors," KRS § 411.182 is of no consequence to the rescission claim at issue.  The Kermans' arguments to the contrary are a transparent attempt to save their rescission claim by conflating KRS § 411.182's reference to the "fault of more than one (1) party" with the *in pari delicto* defense's references to "equal or mutual fault."  They are nonetheless barred from obtaining the equitable relief of rescission from HVB under the latter doctrine.  "As this tax evasion transaction involve[s] unclean hands of the part[ies] seeking relief," we will "refuse[] to grant [them] relief thereon." *Eline*, 252 S.W.2d at

19.  Therefore, we will grant HVB's motion to dismiss the Kerman's rescission claim (Claim IX) on that basis.

### 2.  Claim Under KRS § 446.070

Next, we turn to the Kermans' claim under KRS § 446.070.  This statue provides "[a] person injured by the violation of any statute [the ability] to recovery from the offender such damages as he sustained by reason of the violation." *Id*.  The Kermans derive their claim from HVB's alleged violation of KRS § 141.990, which prohibits individuals from aiding or assisting in the preparation of a false or fraudulent tax return.  They argue that HVB's violation of this statute has "subjected the Kermans to the potential for both civil and criminal penalties" and that they may now recover these losses from HVB under KRS § 446.070. DN 183.  HVB counters by maintaining that the doctrine of *in pari delicto* also requires our dismissal of this claim.  HVB points the Court to our decision in *Dubord v. GMRI* and alleges that it is directly on point.

In *Dubord*, the underage plaintiff drank alcohol to intoxication at the defendant's restaurant. *Dubord v. GMRI, Inc.*, 52 F. Supp. 2d 779, 780 (W.D. Ky. 1999) *aff'd*, 215 F.3d 1325 (6th Cir. 2000).  He never "reveal[ed] his underage status" to his waiter before he was permitted to consume the alcohol, "nor [did his waiter] ask[] for identification." *Id*. The plaintiff eventually left the restaurant, drove in his intoxicated state, and injured seven people, including himself, in a car collision. *Id*.  He then sued the restaurant to "recover for the injuries he inflicted on himself," requesting damages under KRS § 446.070, the statute invoked by the Hermans' here. *Id*. at 781. His § 446.070 claim was premised on the restaurant's violation of KRS § 244.080, a statute that prohibits the sale or delivery of alcoholic beverages to a minor. *Id*.  We ultimately found, however, that the plaintiff's claim was barred "[a]s a matter of law" because his illegal purchase

7

of alcohol and the restaurant's illegal sale were "at once *in pari delicto*." *Id*. at 782. Our

reasoning was as follows:

> We do not believe that [the plaintiff] may escape personal responsibility for his
> own voluntary conduct. His claims are grounded upon the concept that the
> [restaurant] was an "offender" as that term is used in KRS 446.070. Yet [the
> plaintiff] was as much an "offender" as was the [restaurant]. His attempt to hold
> the seller at fault is but a facile effort to gloss over the fact that the sale required a
> purchase. [The plaintiff's] contribution to his own injury is 100% because it is
> indistinguishable from any contribution by the [restaurant].

*Id*. That conclusion – that a plaintiff has no viable claim under KRS § 446.070 where the

defendant's underlying statutory violation and some misconduct by the plaintiff are found to be

*in pari delicto* – would appear to guide our analysis here. The Kermans participated with HVB

in a tax-evasion scheme whose "only economic consequence . . . was [a] . . . tax benefit of

$1,248,876" to the Kermans. *Kerman v. C.I.R.*, 101 T.C.M. (CCH) 1241 at *11. HVB may have

aided or assisted in the preparation of the Kermans' false or fraudulent tax return, but the

Kermans entered into a transaction where they were "promised something for nothing – tax

benefits without economic cost –" and "knew or should have known that [it] was too good to be

true" as a matter of "simpl[e] common sense." *Kerman v. C.I.R.*, 713 F.3d 849, 870 (6th Cir.

2013) *cert. denied*, 134 S. Ct. 904, 187 L. Ed. 2d 778 (2014). The Kermans and HVB were

mutual offenders.

Yet, the Kermans argue that *Dubord* is distinguishable because "[we actually] ruled

under the more specific KRS § 413.241, a statute that even today generally prohibits barkeepers

from being sued for any injuries suffered by an intoxicated individual off-premises who was

served at their establishment." DN 227, p. 6-7. But this is in incorrect reading of our decision. A

careful review of *Dubord* reveals that our decision was merely "*buttressed by* the provisions of

KRS 413.241(2)." *Dubord*, 52 F. Supp. 2d at 782.  Our use of the language "buttressed by" makes clear that this was not the principle basis for our holding.

Equally important, KRS § 413.241(2) – the statute we allegedly ruled under – speaks to selling alcohol to intoxicated persons, not the wrong that the defendant was accused of: selling alcohol to a minor in violation of different statute, KRS § 244.080(1).  Despite the Kermans' characterization, KRS § 413.241(2) specifically prohibits barkeepers from being sued for any injuries suffered by an intoxicated individual off-premises who was served at their establishment *where the server did not know or reasonably should not have known that the individual was intoxicated*. *Dubord*, 52 F. Supp. 2d at 782 (emphasis added).  Not surprisingly, the plaintiff in *Dubord* did not even allege that the defendant had violated this standard as it laid out in KRS § 413.241(2).  And in reality, we mentioned KRS § 413.241(2) in our opinion for one reason: because it captures the Kentucky General Assembly's broad intent to bar suits by persons who overconsume against sellers of alcoholic beverages for the injuries they inflict upon themselves, *not* because it controlled our analysis. *Dubord*, 52 F. Supp. 2d at 782.  We drew from that provision's broad purpose to support the conclusion we had already and separately reached.

Indeed, how the Court began our analysis in *Dubord* is telling: "In Kentucky, alcoholic beverages may not be sold to nor purchased by a person under 21 years of age. KRS 244.080(1) and KRS 2.015; KRS 244.085(3)." 781.  These offenses – the sale to, and purchase by, a minor – were the offenses we considered to be *in pari delicto*.  Therefore, the Kermans are wrong that the Court ruled under the more specific KRS § 413.241 in *Dubord*; as HVB correctly contends, we ruled based on the doctrine of *in pari delicto*.

Because the Kermans have not disputed that they were *in pari delicto* with HVB and they have failed in their attempts to distinguish *Dubord*, we find that our holding in that case is

dispositive of the Kermans' KRS § 446.070-based claim here.  We conclude that the Kermans' "participat[ion] in the abusive CARDS tax-shelter" scheme and HVB's alleged violation KRS § 141.990 are "at once *in pari delicto*" and, consequently,  this claim fails as a matter of law.  For these reasons, we will grant HVB's motion to dismiss the Kermans' Fifth Claim.

### B.  Punitive Damages

Lastly, because the remaining claims directed at HVB will be dismissed as a matter of law, the Kermans' "request for punitive damages," which is inappropriately styled as a separate cause of action, "cannot survive." *See, e.g.*, *Jaglowicz v. Texas Life Ins. Co.*, No. CIV.A. 3:06-CV-95-H, 2008 WL 2437535, at *2, n. 6 (W.D. Ky. June 13, 2008).  It follows that we will also grant HVP's motion to dismiss on this request.

### IV.

For the reasons set forth herein, the Defendant's motion for summary judgment, DN 224, will be granted as to the Plaintiffs' Fifth, Ninth, and Twelfth Claims in the Fourth Amended Complaint. DN 183.  A separate order and judgment will be entered this date in accordance with this Memorandum Opinion.

March 23, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**